IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MASON COMPANIES, INC.,

                       Plaintiff,

   v.

DAZ SYSTEMS, INC.,

                       Defendant.

OPINION AND ORDER

12-cv-547-slc

---

This lawsuit presents a business dispute between a software consulting and engineering company, defendant DAZ Systems, Inc., and one of its clients, plaintiff Mason Companies, Inc. Mason has sued DAZ for breach of contract, alleging that DAZ failed to adequately perform several agreed-upon obligations in connection with DAZ's design and implementation of Oracle enterprise software for Mason. Jurisdiction is present under 28 U.S.C. § 1332 because the citizenship of the parties is diverse (plaintiff is a citizen of Wisconsin and defendant is a citizen of California) and the amount in controversy is over $75,000.

Before the court is the motion of defendant DAZ Systems, Inc. to compel arbitration under the terms of the parties' contract, or, in the alternative, to dismiss the case for improper venue.[1] As discussed below, I find that the arbitration clause arguably applies to the parties' dispute; therefore, arbitration is mandatory. DAZ's motion to compel arbitration will be granted and this case will be stayed pending arbitration. DAZ's alternative motion with respect to venue will be denied as unnecessary.

Before addressing the motions, I note that on January 11, 2013, Mason filed a second amended complaint, adding claims for negligence, professional negligence and negligent

---

[1] DAZ had also moved to dismiss for failure to state a claim under F.R. Civ. P. 12(b)(6), but that motion became moot when Mason filed its first amended complaint.

misrepresentation. Dkt. 35. Whether these new claims are arbitrable is a question beyond the scope of this order. If DAZ wishes to bring another petition to compel arbitration of these new claims, then it must do so not later than January 31, 2013 and the court will set expedited briefing. As discussed below, however, regardless whether DAZ moves to compel arbitration of these new claims and regardless of the court's decision on any new motion, proceedings in this court (with the exception of those related to arbitrability) will be stayed entirely pending the outcome of arbitration of (at least) the breach of contract claim.

BACKGROUND

Plaintiff Mason Companies, Inc. is a company incorporated under the laws of Wisconsin with its principal place of business in Chippewa Falls, Wisconsin. Mason sells footwear, apparel and accessories through various branded business units. Mason primarily sells online and through catalogs and a call center.

Defendant DAZ Systems, Inc., is a California corporation with its principal place of business located in El Segundo, California. DAZ is in the business of providing consulting, software and engineering services.

On August 8, 2011, Mason and DAZ entered into a "Standard Consulting and Services Agreement" (SCSA) under which DAZ was to provide consulting, software and engineering services to Mason at its offices in Wisconsin, and Mason was to pay DAZ for these services. Dkt. 13, exh. 1. The SCSA contemplated that "from time to time they will develop and enter into one or more mutually agreed Statements of Work (each a 'SOW')" that would "set forth, to the extent applicable, DAZ's compensation for such Services and Deliverables, the project scope, the payment and delivery schedule, the activities and tasks to be performed by each party,

2

the roles and responsibilities of each party, the acceptance criteria, and such other terms as determined by the parties." *Id.*, ¶¶ 1.1-1.2.  Under paragraph 1.1 of the SCSA, any SOW into which the parties entered was incorporated into the SCSA, with the parties agreeing that "each SOW will be governed by the terms and conditions set forth in this Agreement."

Under Section 2 of the Agreement, DAZ promised to perform all work set forth in each SOW "in a professional manner" and to perform the services and provide the deliverables in accordance with the timetable for performance set forth in the SOW.  Mason agreed that it would provide the necessary personnel, data, documentation and space reasonably required by DAZ in order timely to complete its work.  Mason further agreed to make a down payment of 20% of the total compensation due to DAZ under the SOW and to make future payments for DAZ's services performed for Mason and for the deliverables delivered to Mason upon receipt of an invoice.  *Id*. §§3.4.1-3.4.2.

The dispute in this case centers on Section 4 of the SCSA, titled "Acceptance and Warranty," which provides:

> **4.1**   CUSTOMER shall evaluate all Services and Deliverables provided hereunder by DAZ and shall submit a written acceptance or rejection (accompanied by detailed explanation) thereof to DAZ (I) in the case of the interim provision or delivery of Services or Deliverables that are identified as subject to acceptance in a SOW, within ten (10) calendar days after CUSTOMER's receipt thereof, or the same shall be deemed to have been accepted by CUSTOMER, and (ii) in the case of the final delivery of Services and Deliverables under a SOW, within thirty (30) calendar days after the "Go Live Date" (as hereinafter defined in Section 4.3) therefore, or the same shall be deemed to have been accepted by CUSTOMER without reservation.
>
> **4.2**   Conformity to written functional specifications or design criteria (or lack thereof) shall solely determine CUSTOMER's right to accept or reject any Services or Deliverables.  If properly rejected, DAZ's sole obligation shall be

3

>to either promptly fix the Services or Deliverables in order that they meet the written functional specifications or design criteria therefore, or to notify and explain to CUSTOMER that the Services or Deliverables comply with the written functional specifications or design criteria therefore.  If DAZ notifies CUSTOMER that the Services or Deliverables comply with the written functional specifications or design criteria therefore, and CUSTOMER does not so agree, then the parties shall attempt to reach an agreement regarding that issue.  If they do not reach an agreement within thirty (30) calendar days, then either party may thereafter terminate the negotiations and require that the issue be submitted to arbitration in a mutually agreeable location in accordance with the rules of the American Arbitration Association.

The parties further agreed that their contract and each SOW thereunder would be governed by California law.  *Id*., ¶ 17.9.

On November 11, 2011, the parties entered into a Statement of Work under the Agreement for DAZ's implementation of Oracle enterprise software for Mason.  At some point thereafter, DAZ began performing work for Mason.

On August 2, 2012, before the establishment of any "Go Live" date, Mason informed DAZ, in writing, that it was rejecting certain services and deliverables provided by DAZ and would not pay DAZ outstanding amounts totaling $230,775.  That same day, DAZ's CEO, Walt Zipperman, notified Mason that DAZ disagreed with Mason's complaint about its services and that DAZ would be asserting its right to full payment.  (A copy of this correspondence is not in the record.)

On August 3, 2012, Mason filed this suit, alleging that DAZ breached the Agreement and Statement of Work by charging Mason for work that was substandard.  Specifically, Mason alleged that DAZ:

1) Provided "extremely poor" project management services;

2) Charged Mason for substandard work for many modules that Mason had been forced to replace with other consultants;

3) Improperly charged Mason $17,278 for an unqualified Siebel consultant who had been removed from the assignment for poor performance; and

4) Improperly charged Mason $105,409 for design of an unusable CSP module.

Mason alleged that it had been damaged in the amount of $834,449.

Three days later, on August 6, 2012, DAZ filed a demand for arbitration of the parties' dispute with the American Arbitration Association. DAZ also notified Mason that it was invoking the right under section 4.2 of the Agreement to arbitrate the dispute between them, and requested that Mason dismiss or stay this suit pursuant to the notice and pending arbitration. Mason has refused to dismiss or stay this suit or to stipulate to arbitration in the case pending before the AAA. It did, however, assert that in the event arbitration proceeded, the locale of the arbitration should be in Minneapolis, and it filed a motion with the AAA to that effect. On September 7, 2012, before this court ruled on the pending motion to compel arbitration, the AAA issued an order granting Mason's request to move the arbitration to Minneapolis. Dkt. 24, exh. G. It appears that proceedings before the AAA have been stayed pending a decision by this court.

OPINION

Title 9, section 2 of the United States Code (section 2 of the FAA) provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

5

This provision embodies both a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S.Ct. 1740, 1745 (2011) (citations and internal quotation marks omitted). Because arbitration is a matter of contract, however, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation and internal quotation marks omitted). Rather, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 131 S.Ct. at 1745 (citation omitted).

To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state law principles of contract formation. *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002)). If the court is satisfied that the parties have a contract that provides for arbitration of some issues between them, then the Arbitration Act requires it to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25(1983). *See also Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). Put another way,

> A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."
>
> *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

In its amended complaint, Mason alleges that DAZ "breached the Agreement by failing to perform all work set forth in the Statement of Work in a professional manner and failing to perform the Services and provide the Deliverables set forth in the Statement of Work in accordance with the timetable for performance set forth in the Agreement." Am. Compl., dkt. 16, ¶28. More specifically (as set forth above at 4), Mason contends that DAZ provided "extremely poor" project management services, charged Mason for substandard work for many modules that Mason had been forced to replace with other consultants, improperly charged Mason $17,278 for an unqualified Siebel consultant who had been removed from the assignment for poor performance, and improperly charged Mason $105,409 for design of an unusable CSP module.

The parties agree that, as a general matter, the Statement of Work is subject to the terms of the SCSA, including §4.2's arbitration provision. They also agree that California law governs construction of the SCSA. California follows familiar rules of contract interpretation, considering the contract as a whole and construing language in context in order to give effect to the mutual intention of the parties as it existed at the time they entered into the contract. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App.4th 1342, 1385, 137 Cal. Rptr.3d 293 (Cal. App. 2012); *Starlight Ridge South Homeowners Ass'n v. Hunter-Bloor*, 177 Cal. App. 4th 440, 447, 99 Cal. Rptr. 3d 20 (Cal. App. 2009).

At the outset, I note that the arbitration clause in the SCSA is narrow. Many arbitration clauses are broader, requiring arbitration of "all" or "any" disputes arising out of or under the parties' agreement, *see, e.g., AT & T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986 ) (finding arbitration clause broad where applied to "differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder");

7

*Int'l Union of Operating Eng'rs, Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 254, 257 (7th Cir. 1994) (finding arbitration clause broad where applied to "any dispute . . . concerning the interpretation or application of the terms of this contract," plus a specific exclusion for jurisdictional disputes); *Certified Grocers of Illinois, Inc. v. Produce, [ . . .] Drivers, Chauffeurs, Warehousemen & Helpers Union, Chicago and Vicinity, Illinois, Local 703*, 816 F.2d 329, 329-30 (7th Cir. 1987) (finding arbitration clause broad where applied to "any difference . . . between the Employer and the Union concerning any interpretation or application of any of the provisions of this Agreement"). Here, by contrast, the arbitration clause applies only to a specific category of disputes: those concerning whether DAZ's services or deliverables comply with "the written functional specifications or design criteria." The issue before the court is whether the factual allegations underlying Mason's claim for breach of contract fall within this category.

Mason does not dispute that its breach allegations relate to DAZ's services and deliverables and it does not dispute that these allegations concern DAZ's compliance with written functional specifications or design criteria. Mason contends, however, that there are additional limitations on the scope of the arbitration provision that narrow it even further and exclude the allegations in the complaint. Mason contends that § 4.2 must not be read in isolation but as a corollary to section § 4.1, which conferred upon Mason certain rights and responsibilities with respect to the acceptance or rejection of services and deliverables provided by DAZ. Mason contends that when these two paragraphs are read together, the arbitration mechanism described in § 4.2 necessarily must be limited to the two acceptance/rejection scenarios set forth in § 4.1: 1) where the customer rejects the interim provision or delivery of Services or Deliverables that are identified as subject to acceptance in a SOW; or 2) where the

8

customer rejects the final delivery of Services and Deliverables under a SOW. So understood, Mason argues, the parties' dispute in this case is not arbitrable because it does not involve either of these scenarios.[2]

In reply, DAZ agrees that the dispute in this case is not about the "final" delivery of services or deliverables. However, it rejects Mason's contention that disputes over "interim" services and deliverables that are not identified as "subject to acceptance" in the SOW are not covered by § 4.2's arbitration provision.[3] DAZ's argument in support of its position is not easy to comprehend. DAZ appears to contend that, in identifying the two scenarios set out in clauses (I) and (ii) of § 4.1, the parties were merely setting forth *examples* of the disputes that are covered by both § 4.1 and § 4.2. *See* DAZ's Reply Br., dkt. 31, at 3-4 ( "Under Section 4.1, the warranty, acceptance and dispute resolution covers all disputes which may arise from any 'interim delivery of Services or Deliverables that are identified as subject to acceptance in a SOW,' § 4.1(I), *to* 2) 'the case of final delivery of Services and Deliverables under a SOW,' § 4.2(ii).") (underlines in original; italics added). To the extent I have correctly interpreted DAZ's argument, it is unpersuasive. The parties did not place the word "to" between clauses (I) and (ii) in § 4.1; they placed the word "and." Furthermore, § 4.1 says nothing about dispute resolution: what it says is that Mason was required to "evaluate" all services and deliverables

---

[2] In a footnote, Mason also argues that DAZ has failed to comply with a number of conditions precedent to arbitration. Br. in Opp., dkt. 23, at 7. However, compliance with conditions precedent is a question for the arbitrator. *Howsam*, 537 U.S. at 84-85 (questions whether prerequisites to arbitration have been met must be determined by arbitrator); *Lumbermens Mut. Cas. Co. v. Broadspire Management Services, Inc.*, 623 F.3d 476, 481 (7th Cir. 2010) (adequacy of Lumbermens' Disagreement Notices was procedural question about condition precedent to arbitration for arbitrator to address).

[3] Alternatively, DAZ argues that the services and deliverables at issue *were* subject to acceptance in the SOW. Because I am ordering arbitration on other grounds, I do not reach that question.

and, in two, specific circumstances (as described in (I) and (ii)), accept or reject them in writing within specified time periods.

DAZ's argument doesn't address the actual question raised by Mason's argument, which is whether the two scenarios described in § 4.1 are the *only* situations to which the dispute-resolution procedure set forth in § 4.2 applies. Mason presents a logical argument in support of its contention that the court should answer this question in the affirmative.[4] Even so, I cannot conclude with "positive assurance" that there is no principled way to interpret the provision differently, in a way that covers the parties' dispute. For one thing, § 4.2 contains no explicit reference to § 4.1. The first sentence reads: "Conformity to written functional specifications or design criteria (or lack thereof) shall solely determine CUSTOMER's right to accept or reject any Services or Deliverables." If the parties meant that this right applied only to the two categories of services and deliverables described in § 4.1, they easily could have cited to that section. Indeed, a review of the SCSA as a whole reveals several instances where the parties *did* cross-reference another section or provision. *See* § 4.1 (referring to § 4.3's definition of a "Go Live Date"); § 4.3 (referring to "timely detailed written notice to DAZ (as hereinbefore provided)"); § 4.3 (referring to rules set forth in Section 4.2). The absence of any such cross-reference in § 4.2 suggests that the term "any Services or Deliverables" means just what it says: *any*.

Further, even § 4.1 does not necessarily restrict Mason's right to accept or reject services or deliverables to the two identified scenarios, as DAZ contends. The first sentence of that provision reads: "[Mason] shall evaluate *all* Services and Deliverables provided hereunder by

---

[4] Notwithstanding DAZ's contentions on this point, *see* dkt. 9 at 11, Mason's position easily surpasses the threshold of Rule 11(b).

10

DAZ."  The provision then goes on to provide that, in the event those services and deliverables are either (I) interim services or deliverables that are identified as subject to acceptance in a SOW, or (ii) a final delivery of services or deliverables, then Mason would be required to provide its reasons (if any) for rejecting the services and deliverables in writing, along with a detailed explanation, within either 10 or 30 days, respectively.  Nothing in the provision indicates, however, that the *only* time Mason was permitted to reject DAZ's services or deliverables was in one of these two situations.  If that were the case, then why would Mason be required to evaluate *all* services and deliverables?

The parties' use of the word "all" in the first sentence of § 4.1, read in context with the word "any" in the first sentence of § 4.2, plausibly supports another interpretation: that Mason was entitled under the SCSA to reject "any" services or deliverables that did not comply with written functional specifications or design criteria, but in the event those services or deliverables were either (I) an interim provision of services or deliverables identified as subject to acceptance in SOW or (ii) a final delivery of services and deliverables, then Mason was required to provide a detailed written explanation of the reasons for rejection within certain time periods.  In other words, § 4.1 does not restrict the scope of services and deliverables that may be rejected for lack of conformity to design specifications, but merely imposes additional procedural obligations with which Mason must comply if the services or deliverables are of the type specifically identified in subclause (I) or (ii).

As noted above, Mason does not dispute that this lawsuit concerns the alleged failure of DAZ's services and deliverables to conform with written functional specifications or design criteria.  Therefore, the dispute raised by the breach of contract claim falls under § 4.2, including its arbitration provision.  "[T]he proper course of action when a party seeks to invoke an

11

arbitration clause is to stay the proceedings rather than to dismiss outright." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n. 7 (7th Cir. 2005) (citing *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002)). Further, even if the new claims asserted in Mason's second amended complaint are not arbitrable, a district court has the discretion to stay nonarbitrable issues while arbitration proceedings are pending. 9 U.S.C. § 3; *see also Moses H. Cone Mem. Hosp.,* 460 U.S. at 20 n. 23 ("In some cases, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of discretion to control its docket."); *see also Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007) ("In many instances, moreover, district courts actually may prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court."). Here, the arbitration proceedings are likely to help resolve the new claims asserted in the second amended complaint because they arise out of the same set of facts underlying the breach of contract claim. Accordingly, I am satisfied that a stay of this case in its entirety is appropriate.

Finally, I note that although DAZ asserted improper venue as an alternative ground for dismissal, *see* dkt. 12 at 1, its attack is against forum (the AAA versus this court), not venue, *see id.* at 5. Notably–and contrary to the cases cited in DAZ's brief–the SCSA does not contain a choice-of-forum clause that would prevent this court from issuing an order compelling arbitration. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (motion to compel arbitration may be brought in any district court having jurisdiction, unless the parties have agreed to a different forum, in which case, the action must be brought in the agreed-upon forum, in accordance with the parties' agreement). As for where the arbitration will be held, 9 U.S.C. § 4 provides that hearings held pursuant to an order to compel

arbitration "shall be within the district in which the petition for an order directing such arbitration is filed." However, I see no reason why the parties could not agree that the arbitration should occur in Minneapolis, as ordered *ultra vires* by the AAA.

## ORDER

IT IS ORDERED THAT:

1. The motion of defendant DAZ Systems, Inc. for an order compelling arbitration, dkt. 8, is GRANTED. This case shall be STAYED pending arbitration, except for proceedings related to the question whether the new claims asserted in Mason's Second Amended Complaint, dkt. 35, are arbitrable.

2. If DAZ Systems, Inc. wishes to bring a petition to compel arbitration of the new claims asserted in Mason's Second Amended Complaint, dkt. 35, then it must do so not later than January 31, 2013.

3. Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(3), dkt. 11, is DENIED as unnecessary.

Entered this 15th day of January, 2013.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge